Thomas JONES

v.

CITY OF PHILADELPHIA, Police Commissioner John Timoney; Lieutenant Joseph Mullin; Police Officer Cedric Gaines; Police Officer Michael Livewell; Police Officer Dwayne Merrill; Police Officer James Klepesley; Police Officer Susan Clark; Police Officer Charles Marable; Police Officer Paul Langford; Police Officer Jose Perez; Police Officer Darryl Gregory

**Appeal of: City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued June 8, 2005.
Decided Jan. 25, 2006.

Craig Gottlieb, Philadelphia, for appellant, City of Philadelphia.

Federico C. Sayre, Santa Ana, CA, for appellee, Thomas Jones.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

The City of Philadelphia (City) has filed an interlocutory appeal by permission from the order entered January 30, 2004, by the Court of Common Pleas of Philadelphia County, denying the City's Motion for Summary Judgment. Addressing a "constitutional issue of first impression" in a well-researched and thoughtful opinion, the trial court determined that Thomas Jones (Jones) was entitled to seek a civil remedy in money damages against the City for its alleged use of excessive force against him, in violation of his state constitutional rights.

## I. *Introduction*

In 2001, Jones filed a complaint for money damages against eleven individual po-

lice officers [1] (Officers) and the City, alleging that he had been personally injured when the Officers used excessive force in apprehending him for driving an admittedly stolen car.[2] Jones claimed the Officers' actions violated his right against unreasonable seizure under Article I, Section 8 of the Pennsylvania Constitution.[3] The City filed a Motion for Summary Judgment.[4] It claimed that, even if Jones could prove the City's policies fostered the use of excessive force, the City was immune under Pennsylvania's Political Subdivision Tort Claims Act (Act), and need not remedy the physical harm that it or its officers caused.

The trial court denied the City's Motion for Summary Judgment.[5] The court concluded that the City could be liable under Article I, Section 8 of the Pennsylvania Constitution if: (1) Pennsylvania courts *create* a cause of action under Section 8 for damages; (2) the judicially-created cause

---

1. Only six officers remain in the case. *See* City Br. at 5, n.1. Two officers are represented by the City of Philadelphia Law Department, and are not participating in the appeal before this Court. *Id.* The other four officers, who have obtained independent counsel, are designated as appellees here, and *support the position of the City* in this proceeding. *See* Pa. R.A.P. 908 ("All parties in the appellate court other than the appellant shall be appellees....").

2. The parties disagree as to what actually occurred during the incident, *see* City Br. at 12; however, such disagreement is irrelevant at this stage of the proceedings. For Jones' description of the incident, excerpted from his Complaint, *see Jones v. City of Philadelphia*, 68 Pa. D. & C.4th 47, 50–52 (C.P. Phila. County 2004); Jones Br. at 5–7. For information purposes only, upon apprehending Jones, the Officers discovered that Jones was unarmed. (Jones Br. at 5 (citing R.R. at 98; Complaint ¶ 20)). However, because this case is before us on a Motion for Summary Judgment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pa. State Univ. v. County of Centre*, 532 Pa. 142, 144–45, 615 A.2d 303, 304 (1992).

3. On November 19, 2001, the City filed a Notice of Removal to the U.S. District Court for the Eastern District (No. 01–CV–5799). The federal court remanded to the Court of Common Pleas of Philadelphia as of May 2, 2002, filed June 13, 2002, because Jones had limited his claims to Pennsylvania law.

4. The Pennsylvania Trial Lawyers Association filed an amicus brief in support of Jones. The following entities filed amici briefs in support of the City: 1) the Pennsylvania School Boards Association Insurance Trust (a not-for-profit entity that provides insurance and risk management programs to more than 400 public schools throughout the state; claims alleging civil rights violations by public school officials are included in the liability coverage provided by the Trust); 2) the School District of Philadelphia (stating that it "writes as Amicus to impress upon the Court the severe impact that would be suffered by the District should the Court create a cause of action under the Pennsylvania Constitution and/or fail to follow the legislative intent and history of the Act by finding that there is no immunity for constitutional claims" (School Dist. Br. at 7)); 3) the Pennsylvania State Association of Township Supervisors (representing the interests of townships of the second class (PSATS)); 4) the Pennsylvania League of Cities & Municipalities (representing the interests of cities, boroughs, townships and home-rule municipalities at the state and federal level (PLCM)); 5) the Pennsylvania State Association of Township Commissioners (representing the interests of townships of the first class and municipal corporations that were formerly townships of the first class now operating under home-rule charters (PSATC)); 6) the Pennsylvania State Association of Boroughs (representing the interests of 9,100 borough officials (PSAB)); and, 7) the County Commissioners Association of Pennsylvania (representing the interests of commissioners, chief clerks, administrators and solicitors in Pennsylvania's 67 counties (CCAP)).

5. In its analysis, the trial court utilized the approach for determining the scope of a constitutional right articulated by our Supreme Court in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991).

of action applies to both the City and individual officers; and (3) it is beyond the legislature's power to immunize government defendants from this judicially created cause of action. *Jones v. City of Philadelphia*, 68 Pa. D. & C.4th 47 (C.P. Phila. County 2004). The court also determined that the City was not immune from suit under the Act, because "the legislature does not have the power under the constitution to take away a state constitutional right." *Jones*, 68 Pa. D. & C.4th at 84.

The City requested the trial court to certify the matter for an interlocutory appeal by permission pursuant to 42 Pa.C.S. § 702(b) "on the specific question of whether the city can be liable under the Pennsylvania Constitution for a claim of excessive force." *Jones*, 68 Pa. D. & C.4th at 54. The trial court denied the City's request. The City then petitioned this Court for review pursuant to Pa. R.A.P. 1311, and we granted the City's petition for an interlocutory appeal.[6]

On appeal, the City states: "to avoid exponentially complicating an already complex case, we accept for purposes of the current appeal that a cause of action exists under the Pennsylvania Constitution, because resolution of that question is unnecessary for resolution of this appeal." (City Br. at 16.) Instead, the City asks this Court to determine whether it can be liable in damages for a claim of excessive force under Article I, Section 8 of the Pennsylvania Constitution when: (1) the *Bivens* case[7] applies only to claims against individual officers, and not to claims against the government; or, in the alternative, (2) pursuant to *Robbins v. Cumberland County Children and Youth Serv.*, 802 A.2d 1239 (Pa.Cmwlth.2002) (en banc),[8] the Pennsylvania legislature's grant of immunity under 42 Pa.C.S. § 8541 serves to bar any State constitutional claims asserted against the City.[9] However, the basis of the trial court's order is that a cause of action exists under the Pennsylvania Constitution and we must, therefore, address this holding. Moreover, without an understanding of the characteristics and scope of the constitutional right at issue, this Court would not be able to determine whether the City was entitled to the governmental immunity it claims.

---

6. Rule 1311(a) states: "An appeal may be taken by permission under 42 Pa.C.S. § 702(b) (interlocutory appeals by permission) from any interlocutory order of a lower court or other governmental unit. See Rule 312 (interlocutory appeals by permission)." Pa. R.A.P. 1311(a).

7. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

8. To support its argument, the City relies on footnote 15 in *Robbins v. Cumberland County Children and Youth Serv.*, which states:

 Assuming, *arguendo*, that a direct cause of action would be cognizable under the State constitution, immunity under 42 Pa.C.S. §§ 8541–8546, would serve to bar any State constitutional claims asserted against [appellee]. *See* Section 8542(b) (granting immunity for claims for monetary damages

except with respect to eight specific types of conduct, none of which is applicable here). 802 A.2d 1239, 1252 n. 15 (Pa.Cmwlth. 2002) (citations omitted).

9. In its Concise Statement of Matters Complained of on Appeal, filed pursuant to Pa. R.A.P.1925(b), the City provides:

 This civil rights action arises out of a July 12, 2000 police pursuit against [Jones], who was admittedly driving a stolen car. [Jones] claims that when he was apprehended, the City violated the Pennsylvania Constitution by using unreasonably excessive force. Given that the City cannot be liable under the Pennsylvania Constitution for a claim of excessive force, the Court should have granted the City's motion for summary judgment, instead of requiring the City to stand trial on [Jones'] claim under the Pennsylvania Constitution.

The trial court agreed with Jones' argument that Article I, Section 8 of the Pennsylvania Constitution, guarantees him a monetary remedy if the City is found by a jury to be liable for the use of excessive force, which caused him physical injury. This is an issue of first impression in Pennsylvania. The trial court agreed with Jones that, if the Pennsylvania appellate courts do not create such a cause of action, the Declaration of Rights enumerated in the Pennsylvania Constitution becomes nothing more than a hollow promise.

However, before we can determine whether the Court should recognize a cause of action for monetary damages for governmental use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution (in other words, a constitutional tort[10]), we must first determine the scope of Jones' right to be protected from the City's alleged use of excessive force under Article I, Section 8 of the Pennsylvania Constitution.[11] Accordingly, we first determine the scope of this right under Article I, Section 8 of the Pennsylvania Constitution, and whether the protections are coextensive with or greater than the protections under the Fourth Amendment of the Federal Constitution. We then examine whether it is necessary for this Court to create a remedy under the Pennsylvania Constitution to enable Jones to recover monetary damages from the City for a violation of Article I, Section 8.

## II. *Analysis*

### A. *Determining The Scope of the Right Under Pennsylvania's Constitution*

 "Pennsylvania has a long and active history of independent enforcement of its state constitution." Jennifer Friesen, *Recovering Damages for State Bills of Rights Claims*, 63 Tex. L.Rev. 1269, 1278 n. 50 (1985). Our Supreme Court has emphasized that, "in interpreting a provision of the Pennsylvania Constitution, we are not bound by the decisions of the United States Supreme Court which interpret similar (yet distinct) federal constitutional provisions." *Commonwealth v. Edmunds*, 526 Pa. 374, 388, 586 A.2d 887, 894 (1991). This is because each state has the power to go *beyond* the minimum levels of protection established by the federal constitution which are "equally applicable to the [analogous] state constitutional provision," *id.* (quoting *Commonwealth v. Platou*, 455 Pa. 258, 260 n. 2, 312 A.2d 29, 31 n. 2 (1973), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974), *overruled by, Commonwealth v. Reese*, 520 Pa. 29, 549 A.2d 909 (1988)), as long as the state remains faithful to the minimum guarantees provided by the federal constitution. *Edmunds* at 389, 586 A.2d at 895. In fact, our state Supreme Court has "stated with increasing frequency that it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution, each time a

---

10. "Claims for constitutional torts were first recognized after the Civil War, when Congress authorized actions for civil damages against individuals 'who, under the color of' state law or custom deprived others of their constitutional rights, and codified statutes under 42 U.S.C. §§ 1981 et seq." Sharon N. Humble, Annotation, *Implied Cause of Action for Damages for Violation of Provisions of State Constitutions*, 75 A.L.R.5th 619, § 2a (2000).

11. Because this inquiry involved a legal determination by the lower court, we must determine whether the lower court committed an error of law in denying the motion for summary judgment. *Green Valley Dry Cleaners v. Westmoreland Cty. Dev. Corp.*, 861 A.2d 1013 (Pa.Cmwlth.2004). When dealing with a question of law, our scope of review is plenary and our standard of review is de novo. *Id.*

provision of that fundamental document is implicated." *Id.* at 389, 586 A.2d at 894–95; *see also PruneYard Shopping Ctr. v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (Rehnquist, J.) (recognizing that states have power to provide broader standards and are encouraged to engage in independent analysis in drawing meaning from their own constitutions). Furthermore, state courts are now required to make a "plain statement" of the "adequate and independent state grounds" upon which they rely, to avoid any doubt that they have rested their decisions "squarely upon [state] jurisprudence." *Edmunds,* 526 Pa. at 390, 586 A.2d at 895 (citing *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).

■ Consequently, our Supreme Court, in *Edmunds,* established four factors to be briefed and analyzed in each case implicating a provision of the Pennsylvania Constitution: [12]

1) the text of the Pennsylvania constitutional provision;

2) history of the provision, including Pennsylvania case-law;

3) related case-law from other states;

4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

526 Pa. at 390, 586 A.2d at 895. "Depending upon the particular issue presented, an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority, but as one form of guidance. However, it is essential that courts in Pennsylvania undertake an independent analysis under the Pennsylvania Constitution." *Id.* at 390–91, 586 A.2d at 895. Although judges and courts are not required to follow this methodology in their opinions, *see* Ken Gormley, *The Pennsylvania Constitution After Edmunds,* 3 Widener J. Pub.L. 55, 66 (1993), we do so here because *Edmunds* provides structure and a consistent means to analyze the issue at bar.[13]

Thus, in the following four subsections, we examine each of the factors set forth in *Edmunds.*

### 1. *Edmunds Analysis—Text*

The wording of Article I, Section 8 of the Pennsylvania Constitution is almost identical to that of the Fourth Amendment. David Rudovsky, *Searches and Seizures,* in *The Pennsylvania Constitution— A Treatise on Rights and Liberties* 299, 300 (Ken Gormley ed., 2004). The text of Article I, Section 8 of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and sei-

---

**12.** *But see Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995)(holding that failure to follow the *Edmunds* protocol does not constitute a fatal waiver of state constitutional claims); *Commonwealth v. Swinehart,* 541 Pa. 500, 664 A.2d 957 (1995)(noting that *Edmunds* factors are "helpful" but not mandatory). Neither of the parties, nor amici curie, explicitly followed the *Edmunds* methodology in their briefs to this Court.

**13.** *See Swinehart* (applying *Edmunds* methodology to analysis of the Article I, Section 9 privilege against self-incrimination); *United*

*Artists' Theater Circuit, Inc. v. City of Philadelphia,* 535 Pa. 370, 635 A.2d 612 (1993) (applying *Edmunds* methodology to analysis of the Article I, Section 10 requirement of just compensation for taking of property); *Blum v. Merrell Dow Pharmaceuticals, Inc.,* 534 Pa. 97, 626 A.2d 537 (1993) (applying *Edmunds* methodology to analysis of the Article I, Section 6 right to trial by jury); *Commonwealth v. Glass,* 718 A.2d 804 (Pa.Super.1998) (applying *Edmunds* methodology to analysis of the Article I, Section 8 protection against unreasonable searches and seizures).

zures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. I, § 8. The text of the Fourth Amendment to the U.S. Constitution states:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

█ Neither of these provisions explicitly describes an individual's right to be protected from the government's use of excessive force. While we have found no case law establishing the requirements to prove a claim for excessive force under Article I, Section 8 of the Pennsylvania Constitution, with regard to the federal constitution,

[w]here ... the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, *it is most properly characterized as one invoking the protections of the Fourth Amendment,* which guarantees citizens

the right 'to be secure in their persons ... against unreasonable ... seizures' of the person.

*Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (emphasis added). Furthermore, the United States Supreme Court, in *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), stated that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Federal courts have required that, to state a claim for excessive force under the Fourth Amendment, a defendant must first show that: (1) a seizure has occurred; and (2) the seizure was unreasonable. *Brower v. County of Inyo,* 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).[14]

## 2. *Edmunds Analysis—History and Pennsylvania Case Law*

The history of Article I, Section 8 of the Pennsylvania Constitution, has been described extensively in court opinions, law review articles and treatises. For that reason, and for the sake of brevity, we provide a brief reiteration of major points in the history of this provision.

As eloquently stated by the trial court:

[T]he Pennsylvania Constitution must be interpreted against this backdrop:

14. *See also Tillman v. Alonso,* 2005 WL 1311588, 2005 U.S. Dist LEXIS 10466 (E.D.Pa. May 31, 2005) (holding dismissal of claim for excessive force premature and not appropriate, where officers kicked in appellant's door as she was attempting to leave home, because questions of fact as to reasonableness of alleged seizure could not be determined from complaint); *Tristani v. City of Pittsburgh,* 755 A.2d 52, 56 (Pa.Cmwlth.2000) (noting where arrestee brought § 1983 action against city for excessive force after he was injured when an off-duty police officer's gun discharged as he was being handcuffed, that

"[t]he fact that a seizure occurred invokes the protection of the Fourth Amendment, and the question of whether that Amendment was violated requires a determination of whether the seizure was reasonable"), *pet. for allowance of appeal denied,* 566 Pa. 673, 782 A.2d 551 (2001); *Armstead v. Twp. of Upper Dublin,* 347 F.Supp.2d 188, 194–95 (E.D.Pa.2004) (stating "[w]hen a police officer uses excessive force in the course of making an arrest, he violates the arrestee's Fourth Amendment right to be free from 'unreasonable' seizures of the person").

Pennsylvanians risked execution for treason for renouncing the British Crown's rule and establishing a government subordinate to its people. They believed so deeply in individual rights and liberties that they made the Declaration of Rights the first article of their new constitution. When the legislative majority encroached on those rights, Pennsylvanians responded by re-asserting the importance of individual rights by taking away the government's majority power over those rights in the Constitutional Convention of 1790.

*Jones,* 68 Pa. D. & C.4th at 62. The Declaration of Rights included the right to be free from unreasonable searches and seizures and the right to life, liberty, property, happiness and safety. *Id.* at 59; *see also* John L. Gedid, *History of the Pennsylvania Constitution,* in *The Pennsylvania Constitution—A Treatise, supra,* at 42. Constitutional limitations on government authority to conduct searches and seizures were thus "grounded in the universal distrust of the practices of English officials in England and in the colonies in the period immediately preceding the Revolutionary War," Rudovsky, *supra,* at 300, and existed in Pennsylvania "more than a decade before the adoption of the federal Constitution, and fifteen years prior to the promulgation of the Fourth Amendment." *Edmunds,* 526 Pa. at 392, 586 A.2d at 896 (quoting *Commonwealth v. Sell,* 504 Pa. 46, 63, 470 A.2d 457, 466 (1983)). In fact, the "modern" version of Article I, Section 8, as revised extensively in *1790,* has remained untouched for two hundred years, with the exception of the words "subscribed to by the affiant," added by the Constitutional Convention of 1873. *Edmunds,* 526 Pa. at 393, 586 A.2d at 897 (citing Buckalew, *An Examination of the Constitution of Pennsylvania,* at 13 (1883)).

As the Supreme Court has stated repeatedly in interpreting Article I, Section 8, that provision is meant to embody a strong notion of privacy. *See, e.g., Commonwealth v. Yastrop,* 564 Pa. 338, 768 A.2d 318 (2001). In *Sell,* the Supreme Court explained, "the survival of the language now employed in Article I, section 8 through over 200 years of profound change in other areas demonstrates that the paramount concern for privacy first adopted as part of our organic law in 1776 continues to enjoy the mandate of the people of this Commonwealth." 504 Pa. at 65, 470 A.2d at 467. As described by the trial court, our Supreme Court "echoed with passion the importance of upholding this provision in yet another case":

> It insulates us from dictatorial and tyrannical rule by the state, and preserves the concept of democracy that assures the freedom of its citizens. This concept is second to none in its importance in delineating the dignity of the individual living in a free society.

*Jones,* 68 Pa. D. C.4th at 63 (quoting *Commonwealth v. Miller,* 513 Pa. 118, 127, 518 A.2d 1187, 1192 (1986)). Consequently, in certain situations, Article I, Section 8, has come to be construed as *more* protective of personal privacy than the Fourth Amendment. Rudovsky, *supra,* at 302; *Commonwealth v. Smith,* 575 Pa. 203, 219, 836 A.2d 5, 15 (2003) (stating that "[t]his Court has indeed accorded greater protections to the citizens of this state under Article I, Section 8, than under the Fourth Amendment *in certain circumstances* ..." (emphasis added)). Given the textual similarity between Article I, Section 8 and the Fourth Amendment, the finding of a privacy-based, broader state constitutional right derives from the case law interpreting the history of the Pennsylvania provision, and not from any textual command. *Commonwealth v. Glass,* 562 Pa. 187, 198 n. 11, 754 A.2d 655, 662 n. 11; *Commonwealth v.*

*Cass,* 551 Pa. 25, 42, 709 A.2d 350, 358 (1998) (noting that "it is not the text itself which imbues Pennsylvania jurisprudence with its unique character but, rather, the history of our case law as it has developed in the area of search and seizure"), *cert. denied,* 525 U.S. 833, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998).

■ There has been significant Pennsylvania case law about the search and seizure provisions of Article I, Section 8, in the context of unreasonable seizures of evidence, since the Fourth Amendment *exclusionary rule*[15] was made applicable to the states in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). During the first decade after *Mapp,* our Supreme Court's decisions tended to parallel those of the U.S. Supreme Court under the Fourth Amendment; however, beginning in 1973, the Pennsylvania Supreme Court began to reject certain Fourth Amendment rulings. *See Edmunds,* 526 Pa. at 392–99, 586 A.2d at 896–99. In its *Glass* opinion, our Supreme Court explained the reason for this divergence in state and federal law:

> The philosophical divergence ... concerned the purposes of the exclusionary rule originally commanded by *Mapp:*

the U.S. Supreme Court has since come to focus on deterrence of police misconduct, while the more recent Article I, Section 8 cases from this Court have focused on the potentiality of the rule, once embraced by us, to safeguard privacy and ensure that warrants are issued only upon probable cause.

562 Pa. at 199 n. 11, 754 A.2d at 662 n. 11; *see also Commonwealth v. Williams,* 547 Pa. 577, 591, 692 A.2d 1031, 1038 (1997) (noting that "this Court has held that Article I, Section 8 often provides greater protection since the core of its exclusionary rule is grounded in the protection of privacy while the federal exclusionary rule is grounded in deterring police misconduct"). For that reason, our Supreme Court recognized that Article I, Section 8 of Pennsylvania's Constitution, provides enhanced privacy protections over those of the Fourth Amendment when it excludes damaging evidence through broader application of the exclusionary rule.[16] However, there has been no Pennsylvania case law defining the search and seizure provisions of Article I, Section 8, in the context of allegations of *excessive force,* nor has a test been established for a violation of that provision by use of excessive force.

**15.** The focus of the exclusionary rule is to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures. *See Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). This rule permits defendants charged with criminal offenses to file a motion to exclude from trial evidence which was secured by means of an unlawful search and seizure. *Id.*

**16.** *See, e.g., Commonwealth v. Gindlesperger,* 560 Pa. 222, 226 n. 3, 743 A.2d 898, 899 n. 3 (1999) (noting because the warrantless use of thermal imaging device violated the Fourth Amendment, "it is clear that this conduct likewise violates Article I, Section 8''), *cert. denied,* 533 U.S. 915, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001); *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769 (1996) (*see infra*

pp. 19–20); *Commonwealth v. Martin,* 534 Pa. 136, 626 A.2d 556 (1993) (holding that, under enhanced privacy protections of Article I, Section 8, a canine sniff of a person is a search and requires probable cause and a search warrant); *Sell,* 504 Pa. 46, 470 A.2d 457 (retaining the "automatic standing" doctrine discarded by the U.S. Supreme Court to allow defendant charged with possessory offense to challenge the seizure of such evidence on Article I, Section 8 grounds); *Commonwealth v. DeJohn,* 486 Pa. 32, 49, 403 A.2d 1283, 1291 (1979) (holding that, under Pennsylvania's Constitution, police can gain access to a person's banking records only through a warrant based on probable cause), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980).

### 3. Edmunds Analysis—Related State and Federal Case Law

Pennsylvania's general prohibition against unreasonable search and seizure is not unique. In fact, state constitutional clauses restraining the government's physical invasions of citizens' privacy are "remarkably similar to one another and to the Fourth Amendment. . . ." and constitutions in forty-six states contain both a prohibition on unreasonable searches and a clause respecting warrants. Jennifer Friesen, *State Constitutional Law: Litigating Individual Rights, Claims and Defenses* 11–5 (3rd ed.2000) (footnote omitted). However, with regard to the unreasonable seizures of evidence, "no other area of constitutional rights has seen a wider and more frequent *divergence* between state and federal supreme courts, and many state courts have not hesitated to ascribe different meaning, for state purposes, to even identical language." *Id.* (emphasis added). For example, states have repeatedly rejected, as a model for applying state search and seizure provisions, the Fourth Amendment test for seizures articulated in *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (holding that there is no seizure governed by the Fourth Amendment until there is an exercise of physical force by the officer or a suspect's submission to authority).[17]

Although much has been written about the search and seizure provisions in the context of *unreasonable seizures of evidence*, we found only one state court opinion, *Hines v. French*, 157 Md.App. 536, 852 A.2d 1047 (2004), where the issue involved a state constitutional violation for the government's *use of excessive force*. The Maryland court in that case found that the "standards for analyzing claims of excessive force are the same under [the state's constitution] as that under the Fourth Amendment of the United States Constitution."[18] *Id.* at 1069.

### 4. Edmunds Analysis—Policy Considerations

*Edmunds* directs that, "in analyzing any state constitutional provision, it is necessary to go beyond the bare text and history of that provision as it was drafted 200 years ago, and consider its application within the modern scheme of Pennsylvania jurisprudence." 526 Pa. at 402, 586 A.2d at 901. We are also to look for "unique issues of state and local concern." *United Artists' Theater Circuit, Inc. v. City of Philadelphia*, 535 Pa. 370, 383, 635 A.2d 612, 619 (1993).

In the modern scheme of Pennsylvania jurisprudence, in certain situations, provisions of our State Constitution provide individuals with greater protections than those they would receive under similar provisions of the Federal Constitution. Article I, Section 8, has been found in particular cases to embody a strong notion of privacy, which is greater than that of the Fourth Amendment. *See, e.g., Commonwealth v. Gindlesperger*, 560 Pa. 222, 226 n. 3, 743 A.2d 898, 899 n. 3 (1999); *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996); *Edmunds.*[19]

---

**17.** For a listing of states rejecting the *Hodari D.* definition of seizure for purposes of the state constitution, see Jennifer Friesen, *State Constitutional Law: Litigating Individual Rights, Claims and Defenses* 11–85 n. 408 (3rd ed. 2000 & Supp.2005).

**18.** However, the *Hines* opinion did not address the issue of whether a state civil remedy for damages would be available for an alleged violation of that state's constitution by the use of excessive force.

**19.** The Court, in *Edmunds*, 586 A.2d at 898, supported the proposition that Pennsylvania courts traditionally have interpreted Article I, Section 8, to reflect a strong concern for privacy by citing, *inter alia: Commonwealth*

■ However, "the right to privacy under Pennsylvania law, although extensive, is not unlimited." *Commonwealth v. Crouse,* 729 A.2d 588, 595 (Pa.Super.1999), *pet. for allowance of appeal denied,* 560 Pa. 738, 747 A.2d 364 (1999). Our Supreme Court has stated that "this [right to privacy] alone 'does not command a reflexive finding in favor of any new right or interpretation asserted.'" *Commonwealth v. Smith,* 575 Pa. 203, 219, 836 A.2d 5, 15 (2003)(quoting *Commonwealth v. Cleckley,* 558 Pa. 517, 525, 738 A.2d 427, 431 (1999)). The Court further emphasized that *"[w]e have not hesitated to follow the prevailing Fourth Amendment standard in appropriate instances."* [20] *Smith,* 575 Pa. at 219, 836 A.2d at 15 (emphasis added) (citing *Cleckley,* 558 Pa. at 524, 738 A.2d at 431–32). In other words, the Court has instructed that "we are to construe the Pennsylvania Constitution as providing greater rights to its citizens than the federal constitution *'only where there is a compelling reason to do so.'"* *Crouse,* 729 A.2d at 596 (emphasis added) (quoting *Commonwealth v. Gray,* 509 Pa. 476, 484–85, 503 A.2d 921, 926 (1985)).

■ Pennsylvania courts have not yet addressed whether there is a compelling reason to find greater protection under Article I, Section 8, than the Fourth Amendment, *where the government uses excessive force during a seizure.*[21] Paraphrasing a comment made by our Supreme Court in *Smith,* 575 Pa. at 222, 836 A.2d at 16, we must ask: is there something unique to Article I, Section 8 that *requires or compels* a different approach to the government's use of excessive force during a seizure than the approach employed under the Fourth Amendment? For guidance, we examine the approach our Supreme Court has used in other cases when determining whether Article I, Section 8, provides greater protection than would be provided under the Fourth Amendment.

As support for deciding that Article I, Section 8, does provide greater protection here, Jones and the trial court cite the cases previously discussed in which our Supreme Court found a compelling reason to provide greater protection under Article I, Section 8, of the Pennsylvania Constitution than did the U.S. Supreme Court under the Fourth Amendment of the U.S. Constitution where the admissibility of improperly seized evidence was at issue. In these cases, Pennsylvania constitutional in-

*v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989); *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988); *Commonwealth v. Miller,* 513 Pa. 118, 518 A.2d 1187 (1986); *Sell; DeJohn;* and *Platou.*

**20.** A similar approach has been followed by the Pennsylvania Supreme Court regarding the handling of claims under *Article I, Section 1,* of the State Constitution and under the *due process clause* of the *Fourteenth* Amendment. *Pa. Game Comm'n v. Marich,* 542 Pa. 226, 229 n. 6, 666 A.2d 253, 255 n. 6 (1995) (stating that "the requirements of Article I, Section 1, of the Pennsylvania Constitution are not distinguishable from those of the [Due Process Clause of the 14th Amendment] ... [thus] we may apply the same analysis to both claims"); *R. v. Dep't of Pub. Welfare,* 535 Pa. 440, 461–62, 636 A.2d 142, 152–53 (1994).

Other courts in Pennsylvania have followed suit. *See also Robbins v. Cumberland County Children and Youth Serv.,* 802 A.2d 1239, 1252 (Pa.Cmwlth.2002) (citing *Marich* and *R., supra*); *Harley v. Schuylkill County,* 476 F.Supp. 191, 195 (E.D.Pa.1979) (stating "[w]e conclude that ... the interpretation to be given to article I, section 1 of the Pennsylvania Constitution is indistinguishable from that given to the fourteenth amendment of the federal constitution").

**21.** For two Pennsylvania cases that apply Section 1983 to address alleged governmental use of excessive force in violation of the Fourth Amendment, although they do not discuss Article I, Section 8 of the Pennsylvania Constitution, *see Tristani* and *Moody v. Phila. Hous. Auth.,* 673 A.2d 14 (Pa.Cmwlth.1996).

terpretation diverged from interpretation of the Federal Constitution.

For example, our Supreme Court found that, under Article I, Section 8, Pennsylvania citizens do have a legitimate expectation of privacy in their bank records. *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980). It, therefore, did not follow the United States Supreme Court's decision, *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), that, under the Fourth Amendment, a depositor did not have a legitimate expectation of privacy in bank records. Instead, it held that a depositor *can* challenge the admissibility of seized bank records.[22]

Four years later, our Court again parted ways with the U.S. Supreme Court and held that, under Article I, Section 8, defendants charged with possessory offenses had "automatic standing" to challenge the admission of seized property into evidence. *Sell.* The U.S. Supreme Court had abolished "automatic standing" for such defendants under the Fourth Amendment in *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

In 1991, the Pennsylvania Supreme Court continued its divergence from U.S. Supreme Court Fourth Amendment jurisprudence regarding the admissibility of evidence, when it decided that the Pennsylvania Constitution did not permit a "good faith" exception to allow evidence that had been seized with a defective warrant to be admitted. *Edmunds.* The Court, in *Edmunds*, examined *United States v. Leon*,

468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which held that the Fourth Amendment does not require suppression of evidence seized pursuant to a defective search warrant, as long as the police officer relied upon the warrant in good faith, and concluded that, despite textual similarities, Article I, Section 8, reflected a stronger concern for privacy than the Fourth Amendment. *Edmunds*, 526 Pa. at 396, 586 A.2d at 898. Thus, it did not follow *Leon's* "good faith" exception.

Five years later, in *Matos*, our Supreme Court had to determine if it should "continue to interpret our State Constitution as affording a suspect a greater degree of protection from coercive state action," 543 Pa. at 453, 672 A.2d at 771, or adopt the reasoning expressed by the U.S. Supreme Court in *Hodari D.*, which held that "seizure" of a person under the Fourth Amendment requires either the application of physical force with lawful authority or submission to the assertion of authority. The Court explained the issue before it to be whether the pursuit by the police officer was a seizure:

> If it was not a seizure then the contraband was abandoned property, lawfully found by the officer. However, if the pursuit was a seizure, then the abandonment was coerced, and the officer must demonstrate either probable cause to make the seizure or a reasonable suspicion to stop and frisk.

*Id.*

The Court, in *Matos*, applied the *Edmunds* test and, relying upon "ample policy reasons," "reject[ed] the decision of the United States Supreme Court in *Hodari*

---

**22.** In *DeJohn*, the bank sought: bank statements, checks, savings bonds, loan applications, loan guarantees, or any of the other papers which "[a] customer ... supplie[s] to the bank to facilitate the conduct of his financial affairs...." 486 Pa. at 46, 403 A.2d at 1290. *But cf. Commonwealth v. Duncan*,

572 Pa. 438, 817 A.2d 455 (2003) (distinguishing *DeJohn*, and holding that Article I, Section 8, does not expand privacy protections to prevent bank's disclosure of *only* the name and address information that corresponded to a suspected rapist's ATM card number).

*D.* as being inconsistent with the constitutional protections afforded under Article I, Section 8 of the Pennsylvania Constitution." *Matos,* 543 Pa. at 462, 672 A.2d at 776. Instead, the Court utilized the *"Jones/Mendenhall"* standard, which coordinated prior state and U.S. Supreme Court precedent, *see Commonwealth v. Jones,* 474 Pa. 364, 378 A.2d 835 (1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978) and *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), *rehearing denied,* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980), with Pennsylvania's Article I, Section 8 jurisprudence, to determine that

"a person has been 'seized' … only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Matos,* 543 Pa. at 458, 672 A.2d at 774 (citing *Mendenhall,* 446 U.S. at 555, 100 S.Ct. 1870). The Court found that, pursuant to this definition, Matos had been seized and the discarded contraband had to be suppressed.[23]

Clearly, there are many cases in which Pennsylvania courts have interpreted Article I, Section 8 of the Pennsylvania Constitution to provide greater protection for individuals than the Fourth Amendment of the U.S. Constitution.[24] However, we dis-

---

**23.** For additional cases in which the Pennsylvania Supreme Court's constitutional interpretation has diverged from interpretation of the Federal Constitution, see *Theodore v. Delaware Valley Sch. Dist.,* 575 Pa. 321, 836 A.2d 76 (2003) (regarding suppression of results for students tested for drugs and alcohol usage), *aff'd,* 575 Pa. 321, 836 A.2d 76 (2003); *Commonwealth v. Shaw,* 564 Pa. 617, 770 A.2d 295 (2001) (regarding suppression of medical test results); *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995) (regarding suppression of contraband found during automobile searches); *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994) (regarding suppression of content of face-to-face conversations in one's own home); *Commonwealth v. Mason,* 535 Pa. 560, 637 A.2d 251 (1993) (regarding suppression of objects obtained from forcible entry into and search of a dwelling); *Commonwealth v. Martin,* 534 Pa. 136, 626 A.2d 556 (1993) (regarding suppression of contraband found after narcotics detection dog "sniff" of person); *Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989) (regarding suppression of telephone records); *Commonwealth v. Johnston,* 515 Pa. 454, 530 A.2d 74 (1987) (regarding suppression of contraband found after narcotics detection dog "sniff" of place); *Commonwealth v. Beauford,* 327 Pa.Super. 253, 475 A.2d 783 (1984), *appeal dismissed,* 508 Pa. 319, 496 A.2d 1143 (1985) (regarding suppression of information obtained from pen registers or dialed number recorders).

**24.** While this statement comprises Jones' main argument, he does expand on the prem-

ise. Jones also argues that creating a cause of action in this case could provide an alternate, state-based remedy against the City for its alleged violations of his state constitutional rights. He believes that victims of police misconduct must be permitted to proceed against such defendants "[i]n order to fully deter police misconduct and protect the privacy interests of citizens.... Such is the only way to put 'teeth' into the prohibitions of unreasonable searches and seizures." (Jones Br. at 23–24.) Jones also contends that the Commonwealth's failure to create such a remedy "leads to the ludicrous result that an individual subjected to excessive force by police … has no recourse for the violation of his constitutional rights." *Id.* at 24.

The Pennsylvania Trial Lawyers Association (PTLA), in its amicus brief in support of Jones, claims that "it would be irrational to consider a right as fundamental as the right to be free from unreasonable searches and seizures to be viewed as being beyond the scope of redress." (PTLA Br. at 11.) It contends that, "without a mechanism to pursue a remedy under the Commonwealth Constitution, the citizens of this Commonwealth would have no ability to enjoy the greater protections provided by the State Constitution." *Id.* at 13.

The trial court agrees with Jones and states that "Article I, Section 8 should, *at a minimum,* provide the same protections as the *Fourth Amendment* in civil cases where an individual has been physically injured by excessive governmental force." *(Jones,* 68 Pa.

agree with Jones and the trial court that Article I, Section 8, *always* provides greater protections than does the Fourth Amendment. Our Supreme Court has not used a blanket approach; rather, it has carefully examined the facts before it and, where application of the federal test under the Fourth Amendment would not protect the constitutional rights of the defendant under the Pennsylvania Constitution, applied a different test to exclude evidence improperly seized.

■■■■■■ While we have not found precedent in which Pennsylvania courts have applied Article I, Section 8, to governmental use of excessive force, we have found cases in which the Pennsylvania Supreme Court applied the *same test* under both the Fourth Amendment and Article I, Section 8, to determine the constitutionality of police/citizen encounters which did not involve the use of excessive force.[25]

Most recently, our Supreme Court confirmed the three-factor balancing test derived from *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), which is used in Fourth Amendment analysis and constitutes the appropriate means of resolving constitutional challenges to systematic roadway checkpoints in Pennsylvania under Article I, Section 8. *Commonwealth v. Beaman*, 583 Pa. 636, 880 A.2d 578 (2005).

In *Beaman*, police stopped the defendant at a sobriety checkpoint and charged him with two counts of driving under the influence. He filed an unsuccessful motion to suppress, claiming that sobriety checkpoints (roadblocks) were *per se* violations of Article I, Section 8 of the Pennsylvania Constitution. After his witness presented statistical data to the trial court, the defendant argued that roving patrols offer a practical alternative to roadblocks and, therefore, the three-factor balancing test previously applied in roadblock cases is inapplicable. *Beaman* at 648, 880 A.2d at 586. On appeal to the Supreme Court, the primary question was "whether roving police patrols are more efficient at identifying and apprehending drunk drivers and, if so, whether this fatally undermines the constitutional validity of checkpoints due to the suspicionless stops that they entail." *Id.*, 583 Pa. at 638, 880 A.2d at 579.

The Court noted that the federal and state constitutions use the *same* three-part balancing test to protect the *same* interest: "both the United States Supreme Court and this Court have recognized that the government has a compelling interest in detecting intoxicated drivers and removing them from the roads before they cause

---

D. & C.4th at 81) (emphasis in original). While noting that monetary damages for physical injuries caused by excessive force "may place a duty of thoroughness and care" upon the government "in order to safeguard the rights of citizens under Article I, Section 8," the trial court found that this is a small price to pay for a democracy. *Id.* at 83 (quoting *Edmunds*, 526 Pa. at 411, 586 A.2d at 906).

**25.** Both the United States Supreme Court and Pennsylvania Supreme Court recognize a "continuum of police interventions, ranging from mere encounters to investigative detentions to full-scale arrests." David Rudovsky, *Searches and Seizures*, in *The Pennsylvania*

*Constitution A Treatise on Rights and Liberties* 299, 312 (Ken Gormley ed., 2004); *see also Commonwealth v. Smith*, 575 Pa. 203, 211–12, 836 A.2d 5, 10 (2003). A mere encounter does not need to be supported by any level of suspicion, and does not require a citizen to stop or respond. *Id.* at 211, 836 A.2d at 10. An investigative detention is lawful if supported by reasonable suspicion; this is because it subjects a suspect to a stop and a period of detention, but it does not involve coercive conditions like an arrest. *Id.* at 212, 836 A.2d at 10. An arrest or custodial detention must be supported by probable cause. *Id.*

injury." *Id.* at 644, 880 A.2d at 583. As to the Fourth Amendment, the Court noted that the U.S. Supreme Court has found that suspicionless stops at roadblocks are constitutionally reasonable. It then reviewed two Pennsylvania decisions regarding similar roadblocks, *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987) and *Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177 (1992), each of which produced a two-justice plurality. The Court determined there to be no constitutional barrier to sobriety roadblocks under Article I, Section 8, "so long as they are conducted in compliance with the standards set forth in *Tarbert* and *Blouse.*" *Beaman* at 648, 880 A.2d at 585 (discussing the *Yastrop* opinion). The Court noted:

> [I]n both *Tarbert* and *Yastrop* it was apparent that the police could have apprehended some drunk drivers by patrolling the roadways in the traditional manner, and yet in each case *a majority of Justices were of the view that the compelling governmental interest in protecting the safety of the motoring public rendered the [U.S.] Supreme Court's balancing test appropriate. Cf.* [*City of Indianapolis v.*] *Edmond,* 531 U.S. [32, 41, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000)] (observing that, in the cases where roadblocks had passed Fourth Amendment scrutiny, the nature of the state's interest—safe roads or patrolling the border—was closely connected with the law enforcement practice used.)

*Id.* at 651, 880 A.2d at 587 (emphasis added). Thus, the Court found that the enhanced privacy protections of Article I, Section 8, did not compel a different result in this situation than would the Fourth Amendment.

In *Commonwealth v. Hughes,* 575 Pa. 447, 836 A.2d 893 (2003), our Supreme Court determined that the "apparent authority exception" to the Fourth Amendment's requirement that the police have consent to enter a premises was also consistent with Article I, Section 8. The Superior Court had affirmed the trial court's denial of a suppression motion in which the defendant alleged that the police officers had invalid third party consent to search his residence. The Court found that apparent authority existed for purposes of the Fourth Amendment; based on the totality of the circumstances, the police officers had reason to believe teenage girls standing on the porch of the appellant's parole residence had valid authority to allow them to enter the premises. The Court then conducted an independent analysis of the Pennsylvania Constitution, using the four *Edmunds* factors, "to determine whether Article I, Section 8, affords Appellant more protection than its federal counterpart." *Hughes,* 575 Pa. at 461, 836 A.2d at 901. In determining that Article I, Section 8, did not afford more protection with regard to "consent to enter a premises," the Court analyzed Pennsylvania case law and stated:

> The adoption of the "good faith exception" [in *Edmunds* ] would have been inconsistent with the Pennsylvania Rules of Criminal Procedure, and with the heightened expectation of privacy that the Constitution affords our citizens. *Unlike Edmunds, there are no cases or rules suggesting that there is a distinction between the Pennsylvania and United States Constitutions with regard to consent to enter a premises.* Rather, this Court has interpreted consent to enter a premises consistent with the interpretation of the United States Supreme Court.

*Id.,* 575 Pa. at 463–64, 836 A.2d at 902–03 (emphasis added and citation omitted). The Court also noted that it had been persuaded by the majority of state courts that adopted the reasoning of the U.S. Supreme Court and determined that ap-

parent authority alone is sufficient. It further explained:

> While we recognize that Article I, Section 8 of the Pennsylvania Constitution affords our citizens greater protections than the Fourth Amendment to the United States Constitution, we do not believe that requiring apparent authority alone is inconsistent with our Constitution. Article I, Section 8 provides that people must be free from unreasonable searches and seizures. Because the officers' belief that they obtained consent from a third party who had common authority over a premises must be reasonable for the "apparent authority exception" to apply, police officers should not be required to obtain a search warrant based upon probable cause where they have apparent authority to conduct a search. A person's privacy rights are no more violated when a third party with actual authority to consent permits police officers to enter a residence than when a person at the house with apparent authority consents to the entry of the police officers into the premises.

*Id.* at 466, 836 A.2d at 904.

The Pennsylvania Supreme Court had previously examined the scope of constitutional protections in "consensual searches" in *Cleckley*. There, our Supreme Court held that the "voluntariness" analysis applied under the Fourth Amendment to determine whether consent for a search was valid, was sufficient under the Pennsylvania Constitution, and that Article I, Section 8, did not require the courts to find that a defendant had also "knowingly and voluntarily waived" his right to refuse to consent to a search. *Id.* at 527, 738 A.2d at 433. In *Cleckley,* a police officer informed the appellant that someone had accused him of selling drugs. The officer then asked the appellant, without using pressure or force, if he could "pat him down," to which the appellant immediately responded in the affirmative, stating that he did not possess any drugs. However, the appellant "visibly possessed in his left hand a change purse which the officer took and unzipped. Inside the purse was some crack cocaine and ninety-eight dollars ($98.00)." *Id.* at 520, 738 A.2d at 428. The appellant filed a motion to suppress the cocaine, arguing that police should be required to expressly advise him that he had the right to refuse a police search.

The appellant acknowledged that the U.S. Supreme Court, in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), had previously determined that the Fourth Amendment test for voluntariness did *not* include a waiver analysis;[26] however, he claimed that the enhanced privacy rights recognized under

---

26. The *Cleckley* Court explained:

> In *Schneckloth,* the Court held that where the subject of the search is not in custody and the state purports that the search was consensual, the Fourth and Fourteenth Amendments dictate that, to be valid, the consent be voluntarily given and not the product of coercion or duress. Significantly, the Court held that a consent search is valid if it meets the test of "voluntariness." That test involves consideration of whether the confession was the product of an essentially free and unconstrained choice. According to the Court, 'voluntariness' is a question of fact to be determined from the totality of the circumstances and, while knowledge of the right to refuse consent is a factor to consider in determining whether consent to search was voluntarily and knowingly given, it is not dispositive. In so holding, the Court reasoned that such a requirement would not only be impractical but it would also hamper legitimate police investigation. Two competing concerns—the legitimate need for consent searches and the assurance that the subject of the search not be coerced—dictated the Court's decision.
>
> *Id.* at 521–22, 738 A.2d at 430 (citations omitted).

Article I, Section 8, required adoption of such a "constitutional waiver" standard because, "by consenting to a warrantless search, one is waiving the right to be free from a warrantless search." *Cleckley*, 558 Pa. at 521, 738 A.2d at 429. Thus, the appellant argued that, under an independent state analysis, the test of "voluntariness" should also include a finding that the subject of the search "knowingly and intelligently waived his or her right to refuse to consent." *Id.*

After acknowledging the *Edmunds* methodology as an aid, the Court began its analysis by distinguishing two Pennsylvania cases cited by the appellant in support of his argument for an intelligent waiver.[27] It then cited other Pennsylvania cases "which have found that the protections of the Fourth Amendment and Article I, Sec-

tion 8, of our state constitution are coextensive."[28] *Cleckley*, 558 Pa. at 525, 738 A.2d at 432.

The Court then noted:

[O]ur prior case law in this area of consensual searches has been confined to an analysis of the Fourth Amendment. *We have not, however, directly spoken to the issue of whether Article I, Section 8 of our state constitution provides greater protection in this area.*

*Cleckley* at 525, 738 A.2d at 432 (citation omitted and emphasis added). After discussing cases from "sister states" which have "analyzed specifically whether to adopt the *Schneckloth* voluntariness standard as the appropriate standard under their own state constitutions," the Court noted that most of them have "rejected the

---

**27.** The Court distinguished *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203 (1994), because "there was no consent to even evaluate" and *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996), because of "the absence of any express consent." *Cleckley*, 558 Pa. at 524, 738 A.2d at 431.

**28.** The Court, in *Cleckley*, cited *Commonwealth v. Waltson*, 555 Pa. 223, 724 A.2d 289 (1998) (declining to find greater protection under Article I, Section 8, that would dictate a warrant be considered overbroad if it permits a search in any area of a single unit residence for which there is no probable cause), and *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031 (1997) (noting that Article I, Section 8, provides no greater protection to a parolee than the Fourth Amendment with regard to search of his bedroom). *See also Smith*, 575 Pa. at 212, 836 A.2d at 10 (applying Article I, Section 8, and the Fourth Amendment to find that police conduct on a commercial bus preceding the discovery of cocaine in a black bag did not constitute a seizure under either the U.S. or Pennsylvania constitutions) (citing *Commonwealth v. Polo*, 563 Pa. 218, 759 A.2d 372 (2000) (construing Article I, Section 8) and *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043 (1995) (applying the Fourth Amendment)); *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161

(2001) (embracing same standard as U.S. Supreme Court that anonymous tip, coupled with appellant's flight when officer approached, is sufficient to support finding of reasonable suspicion); *Commonwealth v. Cook*, 558 Pa. 50, 57, 735 A.2d 673, 677 (1999) (noting that, in *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969) "this court embraced the reasonable suspicion exception to the warrant requirement [of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),] ... and [s]ince *Hicks*, Pennsylvania courts have consistently followed *Terry* in stop and frisk cases, including those arising under Article I, Section 8 of the Pennsylvania Constitution"); *Commonwealth v. Hill*, 874 A.2d 1214 (Pa.Super.2005) (acknowledging use of same approach to police/citizen encounters under both the Fourth Amendment and Article I, Section 8); *Commonwealth v. Johonoson*, 844 A.2d 556 (Pa.Super.2004), *pet. for allowance of appeal denied*, 581 Pa. 673, 863 A.2d 1144 (2004); *Commonwealth v. Lehman*, 851 A.2d 941, 943 (Pa.Super.2004) (stating that "[w]e see no basis upon which to extend greater protection under Article I, Section 8 of the Pennsylvania Constitution, that exists pursuant to the federal constitution" and that "absent direction from our supreme court to the contrary, no deviation from the approach of the U.S. Supreme Court ... is warranted").

notion that knowledge of one's right to refuse consent to a warrantless search is required under [their state constitutions], opting instead to follow the federal voluntariness standard which focuses on the totality of the circumstances as opposed to any one factor." [29] *Id.* at 526, 738 A.2d at 432. The Court was unpersuaded by the appellant's policy argument that an intelligent waiver would protect and enhance one's privacy rights under the state constitution; it noted, instead, that: "we find no policy issues unique to Pennsylvania ... that would cause us to depart from the federal standard." *Id.* at 527, 738 A.2d at 433. Thus, the Court held as follows:

> [C]onsideration of all the *Edmunds* factors leads us to conclude that the federal voluntariness standard as enunciated in *Schneckloth* adequately protects the privacy rights obtained under Article I, Section 8 of our state constitution.... For all the foregoing reasons, we conclude that while the Pennsylvania Constitution provides greater privacy rights than the Fourth Amendment in certain respects, regarding the test for determining whether consent was freely and voluntarily given, those privacy rights *are sufficiently protected where the federal standard* of "voluntariness" *has been met.*

*Id.* at 528, 738 A.2d at 433 (emphasis added).

In these cases, the Pennsylvania Supreme Court *did not find* a compelling reason to provide *greater* privacy rights under Article I, Section 8; rather, the Court found state privacy rights to be sufficiently protected by the Fourth Amendment of the U.S. Constitution.

In this case, Jones has not presented any argument why, based on the facts of his case, his right under the Pennsylvania Constitution to be protected from the use of excessive force "is not sufficiently protected" by the Fourth Amendment protections against the use of excessive force.[30] Unlike cases in which the individuals had not alleged facts which would constitute a violation of the Fourth Amendment, arguably, here, Jones has alleged in his complaint facts which, if true, could constitute a violation of the Fourth Amendment. Therefore, unlike the cases cited by Jones in which Pennsylvania Constitutional rights were not sufficiently protected by the Fourth Amendment, Jones has not shown that here, on these facts, his rights against governmental use of excessive force under Article I, Section 8 are not sufficiently protected by the Fourth Amendment. We have found that here, the protections are coextensive. Therefore, Jones has not shown that there is a compelling reason for the Court to depart from the federal standard, and provide greater protection under the Pennsylvania Constitution.

---

29. The Court noted three state appellate court decisions which had departed from the *Schneckloth* standard when analyzing the issue on independent state grounds. *See Graves v. Mississippi*, 708 So.2d 858 (Miss. 1997); *State v. Johnson*, 68 N.J. 349, 346 A.2d 66 (1975); *State v. Trainor*, 83 Hawai'i 250, 925 P.2d 818 (1996).

30. *See also Commonwealth v. Smith*, 470 Pa. 220, 368 A.2d 272 (1977) (declining to depart from federal authority where appellant articulated no reason particular to Article I, Section

8 that weighed in favor of a departure from the U.S. Supreme Court's totality of the circumstances approach to drug interdiction encounters); *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884 (2000) (stating that *Cleckley* "lays the groundwork for alignment of Pennsylvania law with Fourth Amendment jurisprudence" where appellant offers nothing that would distinguish the pertinent protections available under the Pennsylvania Constitution from those available under the Fourth Amendment).

▆▆▆▆ We must now determine whether this Court must create a cause of action for monetary damages for a violation of Article I, Section 8 of the Pennsylvania Constitution, by the government's use of excessive force in light of our determination that his rights against the use of excessive force in Article I, Section 8 are sufficiently protected by the Fourth Amendment.[31],[32]

**31.** The trial court did not extend its analysis beyond the *Edmunds* factors.

**32.** As background for the remainder of this opinion, there are three methodologies commonly used by the courts when engaging in this level of constitutional analysis: the primacy approach; the interstitial approach; and, the dual sovereignty approach. Ken Gormley, *Overview of Pennsylvania Constitutional Law*, in *The Pennsylvania Constitution—A Treatise, supra*, at 11–12. *See also* Robert F. Williams, *In the Glare of the Supreme Court: Continuing Methodology and Legitimacy Problems in Independent State Constitutional Rights Adjudication*, 72 Notre Dame L.Rev. 1015, 1018–19 (1997); Ken Gormley, *The Pennsylvania Constitution After Edmunds*, 3 Widener J. Pub.L. 55, 70–72 (1993); John W. Shaw, *Principled Interpretations of State Constitutional Law—Why Don't the 'Primacy' States Practice What They Preach?*, 54 U. Pitt. L.Rev. 1019, 1025–29 (1993). These names essentially describe the relative weights accorded to the state and federal constitutions during the course of the court's constitutional analysis. *Id.* at 1025.

The primacy approach looks first at the state constitution; only if the state constitution does not provide sufficient protection of the rights at issue, will the court examine the issue under the federal constitution and federal precedent. Hans A. Linde, *First Things First: Rediscovering the States' Bills of Rights*, 9 U. Balt. L.Rev. 379, 383 (1980). Followers of the primacy approach argue that it assures constitutional protections which reflect the local values underpinning the state constitution. Shaw, *supra*, at 1027. The Supreme Courts of Oregon, *Sterling v. Cupp*, 290 Or. 611, 625 P.2d 123 (1981), New Hampshire, *State v. Ball*, 124 N.H. 226, 471 A.2d 347, 350–51 (1983), and Maine, *State v. Cadman*, 476 A.2d 1148, 1150 (Me.1984), have adopted some form of the primacy approach. Shaw, *supra*, at 1026.

The interstitial approach looks first at the federal constitution; if the federal constitution is not sufficiently protective, the court engages in state constitutional analysis to determine if that document affords greater safeguards. Stewart J. Pollock, *State Constitutions as Separate Sources of Fundamental Rights*, 35 Rutgers L.Rev. 707, 717–19 (1983). Proponents of the interstitial approach argue that it reflects the modern role of the federal constitution as the "basic protector of fundamental liberties," while allowing the states an opportunity to supplement minimum protections afforded by the U.S. Constitution. Shaw, *supra*, at 1028 (citing Pollack, *supra*, at 718).

In the dual sovereignty approach, a court examines the issue under *both* the state and federal constitutions, sometimes creating two "parallel grounds" for its decision. Pollack, *supra*, at 718. Instead of viewing the federal constitution as a secondary, minimum platform, dual sovereignty jurisdictions view the U.S. Constitution as an independent and *equivalent* source of individual rights. Shaw, *supra*, at 1029; *see also, State v. Badger*, 141 Vt. 430, 450 A.2d 336 (1982); *State v. Coe*, 101 Wash.2d 364, 679 P.2d 353 (1984).

Our Supreme Court has not applied a single methodology in evaluating state constitutional issues post-*Edmunds* but, instead, it's "preferred approach has been to eschew such rigid categories." Gormley, *After Edmunds, supra*, at 70–71. Interestingly, some of our Supreme Court cases *combine* the interstitial and the dual sovereignty approaches. *Id.* at 74; *see also In re R.H.*, 568 Pa. 1, 791 A.2d 331 (2002); *Commonwealth v. Hess*, 532 Pa. 607, 617 A.2d 307 (1992); *Stenger v. Lehigh Valley Hosp. Ctr.*, 530 Pa. 426, 609 A.2d 796 (1992); *Commonwealth v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1987). In *Overview of Pennsylvania Constitutional Law*, Ken Gormley writes:

> In one unique case, recently the Pennsylvania Supreme Court in *Pap's A.M. v. City of Erie* waded into an unsettled federal issue of First Amendment law involving nude dancing, engaging in a purely federal analysis and reserving the state constitutional issue for another day. Once the United States Supreme Court reversed on the First Amendment issue, however, the Pennsylvania Supreme Court promptly re-decided the case exclusively under the state constitu-

## B. Determining Whether A New Cause of Action for Money Damages Must be Provided for Violation of the Pennsylvania Constitution

 To date, neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution. *See, e.g., Robbins v. Cumberland County Children and Youth Services*, 802 A.2d 1239, 1251 (Pa.Cmwlth. 2002) (en banc) (commenting that "[n]either party has briefed the difficult issue of whether there exists a direct right of action for money damages against government officials for violations of [Article I, Section 1 of] the Pennsylvania Constitution, and our research has not uncovered any case where such a cause of action was recognized.")[33] The trial court did allow a

---

tion, as if it were in a primacy mode, finding a protected free speech right.
*Id.* at 14 (citations omitted). Here, it appears that we, likewise, have utilized a combination of the interstitial and dual sovereignty approaches.

**33.** Neither have the federal courts recognized a civil cause of action for money damages under any provision of the Pennsylvania Constitution. The federal courts have been reluctant to decide the "novel question" of whether a private cause of action exists for damages for violation of the Pennsylvania Constitution, believing that state courts are better equipped to determine which causes of action derive from our constitution.

In fact, the overwhelming majority of federal cases in which this issue has been raised either fail to reach the merits of the case or decline to exercise jurisdiction. *See, e.g., Pollarine v. Boyer*, 2005 WL 1806481, 2005 U.S. Dist. LEXIS 15425 (E.D.Pa. July 29, 2005) (dismissing state constitutional claims which sought money damages); *Millar v. Windsor Twp.*, 2005 WL 1513120 at *4, 2005 U.S. Dist. LEXIS 17433 at *12 (M.D. Pa. June 24, 2005) (declining jurisdiction over state constitutional claims because "deference to the state appellate courts is appropriate" and Pennsylvania courts have yet to address the issue); *Morris v. Dixon*, 2005 WL 950615, 2005 U.S. Dist. LEXIS 7059 (E.D. Pa. April 20, 2005) (dismissing state constitutional claims which sought money damages); *Kaucher v. County of Bucks*, 2005 WL 283628 at *11, 2005 U.S. Dist. LEXIS 1679 at *32 (E.D.Pa. February 7, 2005) (stating that "it has been widely held that the Pennsylvania Constitution does not provide a direct right to damages"); *Gremo v. Karlin*, 363 F.Supp.2d 771, 794 (E.D.Pa.2005) (dismissing without prejudice state constitutional claims for money damages against government officials because of "embattled status of law in this area" in hopes there "may be

further enlightenment of this issue by state court decisions"); *Mulgrew v. Fumo*, 2004 WL 1699368 at *2 (E.D.Pa. July 29, 2004) (declining jurisdiction over cause of action for damages under Article I believing Pennsylvania state courts are better suited to decide the issue); *Ryan v. Gen. Mach. Prods.*, 277 F.Supp.2d 585, 595 (E.D.Pa.2003) (finding that "the Supreme Court of Pennsylvania has not ruled on the issue ..., and the federal courts in this Circuit that have considered the issue have concluded that there is no such right under the Pennsylvania Constitution"); *Graham v. City of Phila.*, 2002 WL 1608230, 2002 U.S. Dist. LEXIS 13201 (E.D.Pa. July 17, 2002) (declining to retain jurisdiction because underlying issues involving free speech claim under Pennsylvania Constitution implicate difficult and unsettled issues of state law and important public policy considerations which should be decided by Pennsylvania state courts); *Douris v. Schweiker*, 229 F.Supp.2d 391, 405 (E.D.Pa.2002) (noting that "federal courts in this Circuit that have considered the issue have concluded that there is no such right under the Pennsylvania Constitution"); *Dooley v. City of Phila.*, 153 F.Supp.2d 628 (E.D.Pa.2001) (granting judgment as a matter of law because courts in third circuit have concluded there is no private right of action for violation of Article I, Section 7); *Kelleher v. City of Reading*, 2001 WL 1132401, 2001 U.S. Dist. LEXIS 14958 (E.D.Pa. September 24, 2001) (dismissing state constitutional claims, concurring with other federal courts that no private right of action exists); *Curran v. Southeastern Pa. Transp. Auth.*, 1999 WL 79504, 1999 U.S. Dist. LEXIS 521 (E.D.Pa. January 21, 1999) (declining jurisdiction over claim for violation of Article I, Section 7, because it implicates difficult and unsettled area of law), *affirmed*, 191 F.3d 444 (3d Cir.Pa.1999); *Sabatini v. Reinstein*, 1999 WL 636667, 1999 U.S. Dist.

monetary remedy here, relying predominantly upon an interpretation of Article I, Section 8, as *always* providing greater protection to litigants than the Fourth Amendment, and requiring a remedy separate and distinct from its federal counterpart. The court noted that Jones' claim was similar to that permitted under the Fourth Amendment of the U.S. Constitution pursuant to the Supreme Court's holding in *Bivens*, and that its decision was consistent with those of many state and federal courts facing similar issues. The trial court also relied on the "open courts" language in Article I, Section 11 of the Pennsylvania Constitution [34] as authorizing a damages remedy for constitutional violations. Jones urges us to affirm the trial court's decision allowing him to pursue his cause of action for monetary damages. We must, therefore, evaluate the authority upon which Jones and the trial court relied for judicially creating a new cause of action under the Pennsylvania Constitution.[35]

LEXIS 12820 (E.D.Pa. August 18, 1999) (noting that Pennsylvania courts have not decided whether private right of action exists under Sections 7 and 20 of Pennsylvania Constitution); *Lees v. W. Greene Sch. Dist.*, 632 F.Supp. 1327, 1335 (W.D.Pa.1986) (finding no Pennsylvania case law or statute implying a private right of action under the State Constitution, Article I, Section 7); *Pendrell v. Chatham Coll.*, 386 F.Supp. 341 (W.D.Pa. 1974) (rejecting Article I, Section 7 claim for damages and noting that plaintiff could cite no authority which implies such a cause of action). *But see Christie v. Borough of Folcroft*, 2005 WL 2396762 *13, 2005 U.S. Dist. LEXIS 21569 *37 (E.D.Pa. September 27, 2005) (noting that "[n]o binding state case has upheld a claim for monetary damages under the Pennsylvania Constitution" but allowing claim under Pennsylvania Constitution to do so because plaintiffs request both monetary and non-monetary relief); *Harley v. Schuylkill County*, 476 F.Supp. 191, 195–96 (E.D.Pa.1979) (citing *Erdman v. Mitchell*, 207 Pa. 79, 56 A. 327 (1903), and allowing claims for damages under the Pennsylvania Constitution to proceed past the motion to dismiss stage, but relying on a case that involved injunctive relief to reach this conclusion).

In addition, like the trial court, our research has found only one federal case dealing with the issue of whether a civil claim for damages against the government could be brought *specifically under Article I, Section 8* of the Pennsylvania Constitution. *See Coffman v. Wilson Police Dep't*, 739 F.Supp. 257 (E.D.Pa.1990). Although the plaintiff in *Coffman* asserted a claim under Article I, Section 8, *inter alia*, the court stated *only* that plaintiff's state constitutional claims were not barred by the, frequently referred to as, "Pennsylvania Political Subdivision Torts Claims Act," 42 Pa.C.S. §§ 8541–8542. The court explained that "[c]laims arising from violations of the Pennsylvania Constitution may still be raised against local governments.... This result is logical; it would be peculiar if the legislature could abrogate rights protected by the Constitution." *Coffman*, 739 F.Supp. at 264. The district court did not deal with the specific, *threshold* issue of whether the Commonwealth would imply a cause of action for money damages for the government's violation of Article I, Section 8, and, therefore, does not provide assistance in analyzing this issue.

34. Article I, Section 11 provides, in a form unchanged since its original adoption in the Pennsylvania Constitution of 1790, that:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. Art. I, § 11.

35. Jones does not raise, and the trial court did not address, two principles some states have relied upon to establish a cause of action for damages for a state constitutional violation: the Restatement (Second) of Torts, Section 874A, and self-executing constitutional provisions. With regard to the Restatement, Pennsylvania's Supreme Court, like most other state supreme courts, has not yet ruled on whether the principle expressed by Section 874A applies to state constitutional rights. Friesen, *State Constitutional Law, supra,*

### 1. *Bivens and its progeny*

The trial court cited *Bivens*, in which the Supreme Court first created a "constitutional tort" and permitted a petitioner to recover damages for a violation of the Fourth Amendment. Bivens alleged that his arrest and seizure involved excessive force by federal agents, and violated the Fourth Amendment's protections from unreasonable search and seizure. Had it not been the Federal Bureau of Investigation, but state law enforcement officials, that had entered his home, Bivens would have had a cause of action under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violation of his civil rights. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

█ To establish a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) the action occurred "under color of state law"; and (2) the action is a deprivation of a constitutional right or a federal statutory right. *See, e.g., Parratt v. Taylor*, 451 U.S. 527,

535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Because the violation in *Bivens* did not occur under color of *state* law, but under federal law, it was not within the specific language of Section 1983. Nonetheless, the *Bivens* Court relied on well-settled doctrine "that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bivens*, 403 U.S. at 396, 91 S.Ct. 1999 (quoting *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). The federal statute, Section 1983, provided for a general right to sue for a violation of the Fourth Amendment in this situation; however, it did not provide a remedy for violations by federal officials. The Court, therefore, expanded the remedy available under Section 1983 to address the wrong done by the federal officers. With that approach, the *Bivens* Court required the cause of action to meet the statutory requirements of Section 1983. It provided this cause of action only because there was no other adequate federal legislative or administrative remedy, and there were "no special factors counseling hesitation in the absence of affirmative action by Congress." 403 U.S. at 396, 91 S.Ct. 1999.

Following the *Bivens* case, the Court issued only two decisions which applied the rationale in *Bivens* to extend liability: *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (allowing ac-

---

§§ 7–14—7–17. With regard to self-executing constitutional provisions, Pennsylvania courts have not recognized Article I, Section 8, to be one of the provisions of our State Constitution that is self-executing. *But cf., Erdman v. Mitchell*, 207 Pa. 79, 56 A. 327 (1903) (recognizing Article I, Section 1, to be self-executing); *Hunter v. Port Auth. of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631, 636 n. 6 (1980) (citing *Erdman* and noting cause of action arises directly under constitution for

violation of Article I, Section 1, and requires no affirmative legislation for "vindication of those rights in the civil courts"). *But see United Artists Theater Circuit v. City of Phila.*, 535 Pa. 370, 635 A.2d 612 (1993) (holding the Environmental Rights Amendment, Article 1, Section 27, not to be self-executing and requiring legislative action to accomplish its goals).

Because these principles have not been raised, we do not separately address them.

tion against federal officer for violation of Fifth Amendment for sex discrimination against a congressional employee), and *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (allowing action against federal officer for violation of Eighth Amendment for failure to provide proper medical attention to a federal inmate). However, since the time the *Carlson* opinion was issued, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). "[T]he Court has relied on the two factors identified in *Bivens* to prevent its extension: the very existence of 'apparent alternative remedies' is itself a 'special factor [] counselling hesitation.'" *Briscoe v. Potter,* 355 F.Supp.2d 30, 38 (D.D.C.2004)(citing *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988)), *affirmed,* 2005 U.S.App. LEXIS 24040 (D.C.Cir. Nov. 7, 2005). In addition to the existence of available alternate remedies, other factors the Court has evaluated have been whether the remedy is a more appropriate subject for legislative determination, and what the fiscal impact of a new remedy would be.

For example, in *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court declined to create a new non-statutory damages remedy where comprehensive procedural and substantive policies already provided meaningful remedies. In *Bush,* a federal aerospace engineer alleged he had been demoted for publicly criticizing his employer, the National Aeronautics and Space Administration, in violation of the First Amendment. He sought damages, pursuant to a *Bivens* action, for the emotional distress he suffered during his ordeal. The Court refused to create a cause of action, in large part, because of the "elaborate, compre-

hensive scheme," including administrative and judicial procedures, which were in place to protect federal civil servants. While acknowledging that the available administrative remedies did not "provide complete relief for the plaintiff," *id.* at 388, 103 S.Ct. 2404, the Court cautioned that:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff.

Importantly, the Supreme Court was "convinced that Congress is in a better position to decide whether or not the public interest would be served by creating [the remedy requested]." *Id.* at 390, 103 S.Ct. 2404.

In 1988, the Court again refused to extend *Bivens* relief to Social Security recipients whose benefits had been terminated improperly in violation of the Due Process Clause. *Chilicky,* 487 U.S. at 428–29, 108 S.Ct. 2460. The Court agreed with the plaintiffs that "suffering months of delay in recovering the income on which one has depended for the very necessities of life cannot be fully remedied by the 'belated restoration of back benefits.'" *Id.* at 428, 108 S.Ct. 2460. However, the Court held that because Congress "has addressed the problems created by … wrongful termination of disability benefits … [and] … is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program …", *id.* at 429, 108 S.Ct. 2460, it had no legal basis upon which to create a cause of action when Congress had decided

not to do so. *Id.; see also Malesko*, 534 U.S. at 69, 122 S.Ct. 515 ("[*Chilicky* ] rejected the claim that a *Bivens* remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court. It [does] not matter ... that '[t]he creation of a *Bivens* remedy would obviously offer the prospect of relief for injuries that must now go unredressed' ") (quoting *Chilicky*, 487 U.S. at 425, 108 S.Ct. 2460).

As recently as 1994, the Supreme Court further limited the *Bivens* holding in *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), by refusing to imply a damages action directly against federal *agencies*. It reasoned that, unlike in *Bivens*, there were "special factors counselling hesitation" in the creation of such a remedy, including a "potentially enormous financial burden for the Federal Government." *Meyer*, 510 U.S. at 486, 114 S.Ct. 996. The Court also noted that "decisions involving 'federal fiscal policy' are not ours to make," and left it to Congress "to weigh the implications of such a significant expansion of Government liability." *Id.*

In this case, the City is considered a local governing body which, under *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), can be sued directly under Section 1983 for monetary relief.[36] If Jones can establish the allegations in his Complaint, i.e., that (1) the City used excessive force against him, and (2) such force was executed pursuant to a policy statement, ordinance, regulation, or decision that was officially adopted or promulgated, or, if the excessive force occurred

pursuant to "custom," the City could be liable under Section 1983 for the monetary damages he seeks. The remedy, however, would be under Section 1983, for violation of the Fourth Amendment of the Federal Constitution, and not for a violation of the Pennsylvania Constitution.

The existence of an apparent alternative remedy is a "factor counseling hesitation." *Chilicky*, 487 U.S. at 421–23, 108 S.Ct. 2460.[37] Here, that alternative remedy is not derived from the Pennsylvania Constitution, but is, instead, based upon a violation of the Federal Constitution. This fact highlights a concern underlying the trial court's opinion: whether a right under the Pennsylvania Constitution can only be vindicated by a remedy created under the Pennsylvania Constitution. Because the trial court found that the protection against governmental use of excessive force is broader under the Pennsylvania Constitution, the court also found that a remedy under the Federal Constitution would not have been sufficient to protect that right.

In this case, however, after careful evaluation of the facts in this case, we determined that the protection is not broader under Article I, Section 8, and that the rights are sufficiently protected by the Federal Constitution. The remedy for monetary damages under Section 1983 for violation of the Fourth Amendment is, therefore, an alternative remedy. Whether an alternative remedy is adequate cannot be determined simply by evaluating whether it provides complete relief for the plaintiff. *Bush*, 462 U.S. at 388, 103 S.Ct. 2404; *Provens v. Stark County Bd. of Mental Retardation & Dev. Disabilities*,

---

**36.** The *Monell* Court also noted that its holding was "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* at 691 n. 54, 98 S.Ct. 2018.

**37.** Jones can also pursue injunctive/declaratory relief against the City under the State Constitution.

64 Ohio St.3d 252, 594 N.E.2d 959, 965 (1992). An alternative remedy may be considered adequate even if it does not provide Jones "a complete remedy." *See Bush.* Here, even though the remedy is for violation of the federal constitution, we do not believe this remedy "should be augmented by the creation of a new judicial remedy for the constitutional violation at issue." *Id.,* 462 U.S. at 388, 103 S.Ct. 2404.[38] Therefore, the existence of this alternative remedy for Jones weighs very heavily against creating a new cause of action for monetary damages.

Another important factor, which weighs heavily against our creating a private right of action for monetary damages, is that, unlike in *Bivens,* there is no state statute similar to Section 1983, that already provides for a general right to sue for a constitutional violation. We believe that a decision to create a cause of action for damages for a constitutional violation, in the first instance, is more appropriate for the legislature, as did the courts in, for example, *Bush,* 462 U.S. at 390, 103 S.Ct. 2404, and *Meyer,* 510 U.S. at 486, 114 S.Ct. 996. The legislature is in a much better position to analyze and address the diverse policy considerations involved:

> First, by defining elements, defenses, and immunities to the cause of action, a statutory scheme can foreshorten years of trial-and-error rule making in the appell[ate] courts.... Second, because most persons and organizations subject to constitutional standards presumably desire to be law-abiding, they deserve such guidance as will permit them to conform their conduct to constitutional expectations. A remedial statute ... can guide planning and training and also provide the legal incentive sometimes needed for institutional reform. Third, the legislative process obviously permits greater participation by parties likely to be directly affected, perhaps resulting in more sensible and workable rules. Fourth, the legislative process performs a unique educative function that can never be duplicated by the world of judicial review....

Friesen, *Recovering Damages, supra,* at 1284.[39]

Another factor which weighs against the creation of a civil cause of action is the potential financial burden for state, local and municipal government entities. *See Meyer,* 510 U.S. at 485–86, 114 S.Ct. 996 (1994) ("special factors counseling hesitation" include the "potentially enormous financial burden for the Federal Government" if damages action directly against

---

**38.** An issue not addressed by the trial court is whether the creation of a separate remedy for violation of Article I, Section 8 of the Pennsylvania Constitution, would be in addition to the remedy already available for violation of the Fourth Amendment of the U.S. Constitution. In other words, could a plaintiff sue for separate violation of rights under *both* the Pennsylvania and U.S. Constitutions and recover damages for *each* violation?

**39.** *See also* George D. Brown, *Letting Statutory Tails Wag Constitutional Dogs—Have the Bivens Dissenters Prevailed?,* 64 Ind. L.J. 263, 266–67 (1989) (noting that the major theme of the dissenters in *Bivens,* Chief Justice Burger and Justices Black and Blackmun, was that "the creation of the *Bivens* remedy was such

an essentially legislative task that only Congress could perform it" and, also, that "the decision whether or not to grant a remedy involved choices which Congress was in a better position to make because of its superior institutional competence"); *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder County Sch. Dist.,* 16 P.3d 533, 539 (2000) (noting that "the legislative branch has the authority, and in many cases is better suited, to establish appropriate remedies for individual injuries. By requiring courts to defer to relevant legislative determinations of appropriate remedies, we respect the legislature's important role in our constitutional system of government").

federal agencies are permitted). Exposing state and local municipalities to monetary damages for the alleged use of excessive force in the transaction of their duties, *in the absence of a defined statutory scheme,* would result in other adverse consequences effecting governmental functions. Without a statute or a description of the conduct that is actionable, municipalities cannot predict the parameters of the cause of action. This concern was not foremost in *Bivens* because there was a federal statute, Section 1983, and interpretive case law, which described the conduct that was actionable and limited it to situations where the municipal action alleged to be unconstitutional "implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or was shown to comprise a "governmental 'cus-

tom' even though such a custom has not received formal approval." *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018.[40] In other words, municipalities were liable only where there was an action pursuant to official municipal policy, custom or practice. However, Pennsylvania does not have a statute similar to 42 U.S.C. § 1983. Unaccompanied by any parameters or standards, creation of a state *Bivens*-type remedy as proposed here could "have a chilling effect on the zeal with which [municipal bodies] undertake their responsibilities." *See Kelley Prop. Dev., Inc. v. Town of Lebanon,* 226 Conn. 314, 627 A.2d 909, 924 (1993).

In addition, we note that, in the factual situation presented here, there exists little legal authority from other states *for* the creation of a remedy.[41] As stated in *Chil-*

**40.** *See also* Colleen R. Courtade, Annotation, *What Constitutes Policy or Custom for Purposes of Determining Liability of Local Government Unit Under 42 U.S.C.A. § 1983—Modern Cases,* 81 A.L.R. Fed. 549 (1987); Diane M. Allen, Annotation, *Liability of Supervisory Officials and Governmental Entities for Having Failed to Adequately Train, Supervise, or Control Individual Peace Officers Who Violate Plaintiff's Civil Rights Under 42 U.S.C.A. § 1983,* 70 A.L.R. Fed. 17 (1984).

**41.** Although some state courts have allowed recovery of damages for state constitutional violations relying on *Bivens* and its progeny in their opinions, none have created a cause of action for use of excessive force. *See, e.g., Strauss v. State,* 131 N.J.Super. 571, 330 A.2d 646, 648–49 (1974) (denying a motion to dismiss a count in a complaint alleging a cause of action against the state for violation of a plaintiff's due process rights and noting that, like the U.S. Supreme Court's decision in *Bivens,* New Jersey courts recognize tort actions based upon violations of an individual's constitutional rights); *Widgeon v. Eastern Shore Hosp. Ctr.,* 300 Md. 520, 479 A.2d 921, 927–31 (1984) (Maryland Court of Appeals recognized that its state constitutional provisions are read *in pari materia* with similar provisions of U.S. Constitution, that Supreme Court decisions with regard to those provi-

sions are "particularly persuasive," and that, pursuant to English common law, the Magna Carta and *Bivens* violations of those federal constitutional provisions give rise to private damage actions; therefore, the court held that "where an individual is deprived of his liberty or property interests in violation of [the state constitution], he may enforce those rights by bringing a common law action for damages."); *Corum v. Univ. of North Carolina,* 330 N.C. 761, 413 S.E.2d 276, 290 (1992) (noting that its determination was consistent with *Bivens, inter alia,* "to the effect that officials and employees of the State acting in their official capacity are subject to direct causes of action by plaintiffs whose constitutional rights have been violated;" the court explicitly stated that, "[h]aving no other remedy, our common law guarantees plaintiff a direct action under the State Constitution for alleged violations of his constitutional freedom of speech rights."), *cert. denied,* 506 U.S. 985, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992).

Other state courts have cited the exceptions and limitations in *Bivens* to deny relief, but they, too, did not address the issue of the use of excessive force. *See, e.g., King v. Alaska State Housing Auth.,* 633 P.2d 256, 260–61 (Alaska 1981) (holding the *Bivens* doctrine inapplicable when it considered appellants' allegations of various improprieties in the se-

*icky*, 487 U.S. at 421–22, 108 S.Ct. 2460 "[t]he absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages. ..." In fact, the Court stated: "We therefore reject[] the claim that a *Bivens* remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court." *Id.* at 425, 91 S.Ct. 1999. Thus, *Bivens* and its progeny do not, in this situation, require the creation of a cause of action for monetary damages under the Pennsylvania Constitution.

### 2. *Open Courts Provision of Pennsylvania Constitution*

Article I, Section 11 of the Pennsylvania Constitution, contains several components which are referred to as the open courts provision, the remedies provision and the immunities provision.[42],[43] Article I, Section 11 provides:

> All courts shall be open; and every man for an injury done *him* in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

The remedies portion of the provision is contained in the first sentence and provides that every person shall have a remedy for injury done to his person. Jones' argument and the trial court's decision rely, in large part, on this portion of Article I, Section 11, and are implicitly dependant on the premise that a "remedy" *necessitates* a monetary damages award, and one that must derive from the Pennsylvania Constitution.

 However, Jones does have a remedy under the Federal Constitution for monetary damages and can pursue them in state court. States, as well as federal

lection of proposals for private redevelopment in the city of Anchorage; noting the *Bivens* limitation of "special factors counseling hesitation," the court determined that "creation of a constitutional cause of action in appellants' favor 'would subject public agencies to endless lawsuits by disappointed bidders' "); *Provens v. Stark County Bd. of Mental Retardation & Dev. Disabilities*, 64 Ohio St.3d 252, 594 N.E.2d 959, 965–66 (1992) (citing the limitation in *Bivens* describing the availability of adequate, alternative remedies, and holding that "public employees do not have a private cause of civil action against their employer to redress alleged violations by their employer of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process"; the court would "defer to the legislative process of weighing conflicting policy considerations and creating certain administrative bodies and processes for providing remedies ....").

42. The vast majority of state constitutions contain similar provisions. *See* David Schu-

man, *The Right to a Remedy*, 65 Temp. L.Rev. 1197, 1200 (1992). These provisions typically provide that, for injuries of a certain type, an individual should have access to a remedy through the *state's* legal system. *Id.* at 1201–02. However, the courts are in total disarray about how to interpret the various open courts provisions. Jonathan M. Hoffman, *By the Due Course of Law: The Origins of the Open Courts Clause of State Constitutions*, 74 Or. L.Rev. 1279, 1282 (1995).

43. Open Courts provisions "include the guarantees of a) open courts, b) remedies, c) by due course of law, d) for injuries to person, property, and reputation, e) with right and justice administered, and f) without sale, denial or delay." Donald Marritz, *Courts to be Open; Suits Against the Commonwealth*, in *The Pennsylvania Constitution—A Treatise, supra*, at 457 n. 6. However, the "remedies" portion "is the most contentious component of Article I, Section 11," and "remedy clauses like this have generated the most legislation, litigation, and literature of any element of open courts provisions. *Id.* at 486–87 (footnotes omitted)."

courts, have jurisdiction over claims brought pursuant to Section 1983. *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). "Federal law is enforceable in state courts ... because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature." *Id.* at 367, 110 S.Ct. 2430.

Furthermore, monetary damages are only one type of remedy that might be available for a violation of Article I, Section 8.[44] Other remedies, such as declaratory or prospective injunctive relief, could provide a remedy. While such remedies might not provide Jones "complete relief," *see Bush*, 462 U.S. at 388, 103 S.Ct. 2404, they are, nonetheless, remedies under the Pennsylvania Constitution.

"The common law has always evolved to meet changing circumstances and should continue to do so. It is quite another thing to suggest that the open courts clause requires a remedy [or, for that matter, a *particular* remedy] for every right...." Jonathan M. Hoffman, *By the Due Course of Law: The Origins of the Open Courts Clause of State Constitutions*, 74 Or. L.Rev. 1279, 1317 (1995). For these reasons, we hold that the open courts provision does not require the creation of a cause of action for monetary damages here.

### III. *Conclusion*

Our analysis, thus, leads us to the conclusion that the judicial creation of a new cause of action for monetary damages for the City's alleged violation of Article I, Section 8 of the Pennsylvania Constitution,

is not required in this case. We do not minimize the trial court's concerns, which we share, regarding the importance of protecting the constitutional rights of Pennsylvania citizens that are specifically promised to each citizen under the Pennsylvania Constitution. We appreciate the difficulty in balancing the constitutional protections that are essential to our freedom. Under the facts in this case, however, there is no evidence that the protection against the use of excessive force in Article I, Section 8, is broader than the Fourth Amendment. Because the same test would be applied here, to protect the same interest, under both Federal and State Constitutions, the protections are coextensive and Jones' right to be free from governmental use of excessive force is protected by the Federal Constitution as it would be under the Pennsylvania Constitution. Importantly, unlike in *Bivens*, there is no state statute which generally provides for a right to sue for this violation. There are many factors which counsel hesitation against the courts creating a new monetary remedy, where a remedy already exists, without benefit of legislative action.

Consequently, we hold that, in this case, there is no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution. The trial court order is reversed as to the City of Philadelphia, and summary judgment is granted for the City.[45]

Judge FRIEDMAN dissents.

### *ORDER*

**NOW,** January 25, 2006, the order of the Court of Common Pleas of Philadelphia

---

**44.** Other violations of Article I, Section 8, have been remedied by application of the so-called exclusionary rule. *See supra* pp. 13–14.

**45.** Because of our holding in this case, we need not reach the City's arguments that a *Bivens* cause of action does not apply to government entities and that the City is immune under the Tort Claims Act.

County in the above-captioned matter is hereby reversed.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully disagree with the decision of the Majority to reverse the order of the Philadelphia County Court of Common Pleas, which in an exhaustive review of relevant and persuasive case law denied the motion filed by the City of Philadelphia (Appellant) requesting entry of summary judgment in Thomas Jones' (Appellee) civil action. Appellee avers a cause of action for money damages against the City, and other named defendants, pursuant to Article I, Section 8 of the Pennsylvania Constitution [1] arising out of injuries he sustained when police used excessive force to arrest him and thereby violated his constitutional rights against unreasonable searches and seizures. Appellant claims governmental immunity under 42 Pa.C.S. §§ 8541–8564, commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), and it contends that the Court need not create a state constitutional cause of action for money damages when Appellee may seek relief in an action in federal court under 42 U.S.C. § 1983 (Section 1983).

Notwithstanding its extensive research, discussion and analysis of the history of Pennsylvania constitutional case law vis-à-vis the presumed alternative remedies available under Section 1983 to conclude that no state constitutional cause of action exists, the Majority ultimately decides to protect the state and local governments from damage causes of action under Article I, Section 8 of the Pennsylvania Constitution based on excessive use of force by police because adverse consequences might inure to governments absent some defined statutory scheme. I reject this "adverse consequences" contention as a basis for refusing to recognize a civil remedy for the violation of an express right guaranteed by the Constitution. As the New York Court of Appeals recognized in *Brown v. State of New York*, 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996), the state constitution is a source of positive law and not merely some set of limitations on government.

Initially, I note that a trial court's order denying summary judgment should be reversed only when it is clear that no relief may be granted as a matter of law and that the trial court committed an error of law. *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245 (1995); *Davis v. Brennan*, 698 A.2d 1382 (Pa.Cmwlth.1997). That standard is not met here simply because the Majority concludes that an alternative remedy exists under Section 1983 or because no state statute or prior case authority exists that recognizes a cause of action under Article I, Section 8.

The principle is firmly established that when interpreting provisions of the Pennsylvania Constitution the Pennsylvania Supreme Court is not bound by decisions of the United States Supreme Court in interpreting similar federal constitutional provisions. In *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), the Pennsylvania Supreme Court established the principle that Article I, Section 8 of the Pennsylvania Constitution embodies a strong notion of privacy, despite federal decisions to the contrary under Fourth Amendment analysis, and that the right

---

1. Article I, Section 8 provides as follows:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

afforded in Article I, Section 8 to be free from unreasonable searches and seizures is connected to the Constitution's implicit right to privacy in this Commonwealth. The Pennsylvania Constitution thus affords greater protection against unreasonable searches and seizures than does the federal constitution, and as quoted in *Edmunds* Article I, Section 8 serves *"as an independent source of supplemental rights." Id.*, 526 Pa. at 398, 586 A.2d at 899 (emphasis added).

In reviewing developments in exclusionary rule jurisprudence since *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Pennsylvania Supreme Court in *Edmunds* noted the inception of its divergence from federal precedent in 1973 and explained that the United States Supreme Court had moved toward a view suggesting that the exclusionary rule's purpose was not to "redress the injury to the priva-cy of the search victim," *id.,* 526 Pa. at 396, 586 A.2d at 898, but rather to deter future unlawful police conduct. Thus it is logical to presume that in *Edmunds* the Supreme Court recognized that Article I, Section 8 represented an added source for redress of injury caused by a violation of the guaranteed right against unreasonable searches and seizures. Indeed, the court had previously endorsed the view that Article I, Section 8 offered an independent source of supplemental rights.

In *Edmunds* the Supreme Court set forth clear guidelines for courts to follow when interpreting provisions of the Pennsylvania Constitution on questions of first impression. As a general rule, litigants should brief and analyze the following stated factors: (1) text of the constitutional provision; (2) history of the provision, including Pennsylvania case law;[2] (3) any

**2.** In *Coffman v. Wilson Police Department,* 739 F.Supp. 257 (E.D.Pa.1990), the federal district court held that claims arising from violations of the Pennsylvania Constitution may be raised against local governments and that the plaintiff's claims arising under Article I, Sections 8 and 26 were not barred by the Tort Claims Act. *Cf. Warren v. Cheltenham Township,* No. Civ. A. 94–4999, 1995 WL 732804, at *6 (E.D.Pa. November 13, 1995) ("[S]ection 8541 does not render local governments immune to actions under the constitution of Pennsylvania."); *In re PVI Assocs.,* 181 B.R. 210, 215 (Bankr.E.D.Pa.1995) ("[I]t remains true that neither the concept of sovereign nor governmental immunity is designed to insulate government agencies from claims arising under the State Constitution."). The court in *Coffman* cited Pennsylvania cases decided after enactment of the Tort Claims Act in 1980, and while recognizing that later federal court decisions have disagreed with *Coffman* Appellee notes that the Tort Claims Act only immunizes torts arising under common law or a statute. *See also* Article I, Section 26 ("Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."); *Erd-man v. Mitchell,* 207 Pa. 79, 56 A. 327 (1903) (holding that Article I, Section 26 needs no affirmative legislation for its enforcement in civil courts as the right of liberty and right to acquire property must be recognized and protected under common-law judicial power of courts, and it needs no statutory authority to enforce against the violators of constitutional rights).

In determining whether an implied cause of action exists under Article I, Section 8, this Court may find direction in Article I, Section 11, which provides that "every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law[.]" Guidance may be found in other Pennsylvania court decisions allowing claims against municipalities for violation of the Declaration of Rights in the Pennsylvania Constitution. *See, e.g., Thelin v. Borough of Warren,* 118 Pa.Cmwlth. 336, 544 A.2d 1135 (1988) (allowing suit for violation of contract rights under Article I, Section 17); *Williams v. City of Pittsburgh,* 109 Pa.Cmwlth. 168, 531 A.2d 42 (1987) (recognizing suit for violation of equal protection and due process clauses); *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 12 n. 6, 419 A.2d 631, 636 n. 6 (1980) (recognizing cause of action under Article I, Section 1 for remedies relating to

related case law from other states; and (4) policy considerations, including unique issues of state and local concern, and their applicability within modern Pennsylvania jurisprudence. The Supreme Court agreed that depending on the issue involved, an examination of federal case precedent may be helpful in the state constitutional analysis. For purposes of this case, the critical factors weighing in the Court's analysis concern a review of related case law from other states and policy considerations and their applicability within modern Pennsylvania jurisprudence. As noted in *Brown*, other state courts have allowed state constitutional tort claims based on (1) reasoning contained in the Restatement (Second) of Torts § 874A (1979) (Restatement); (2) analogy to an action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); and (3) common-law antecedents of constitutional provisions under interpretation, or a combination of these.

In *Brown* the New York Court of Appeals held that a cause of action for damages may be filed against the state for violations of the equal protection and unreasonable searches and seizures clauses under article I, sections 11 and 12 of the New York constitution arising out of claims from unlawful stops, interrogation and searches by New York police and state university security of all Black male university students located in the area of an alleged early-morning attack against a white female. The court considered Section 874A of the Restatement, which provides that a court may imply a civil remedy from legislative or constitutional provisions even when a remedy is not expressly provided for if the court determines that a remedy is appropriate to further the purpose of the provision and to assure its effectiveness, and it reasoned that the analysis in *Bivens* demonstrates the Restatement principle. In addition, the court was keenly aware of the fact that a Section 1983 action is controlled by federal statutory and case law, which limit liability to actions taken "under color of state law" or as a matter of governmental policy or custom. By contrast, a plaintiff seeking to recover under respondeat superior in a state constitutional claim does not fall within the Section 1983 limits.

In answering questions presented by the court's recognition of a state constitutional cause of action under the equal protection and unreasonable searches and seizures clauses of the New York constitution, regardless of the absence of statutory or common-law bases, the court reasoned in *Brown* as follows:

> In *Bivens*, the Supreme Court implied a cause of action for damages against Federal officials who violated the search and seizure provisions of the Fourth Amendment. The underlying rationale for the decision, in simplest terms, is that constitutional guarantees are worthy of protection on their own terms without being linked to some common-law or statutory tort, and that the courts have the obligation to enforce these

denial of employment wherein the court stated that "no affirmative legislation is needed for the vindication" of rights in this section); and *Harley v. Schuylkill County*, 476 F.Supp. 191 (E.D.Pa.1979) (stating that Article 1, Section 1 is self-executing, like other sections of the constitution, and needs no affirmative legislation, civil or criminal, for its enforcement in civil courts). *See O'Neill v. White*, 343 Pa. 96, 22 A.2d 25 (1941) (reiterating principle that when a constitutional provision is complete in itself it needs no further legislation to put it in force; in other words it is self-executing if it is susceptible of execution and does not require specific legislation to become operative).

rights by ensuring that each individual receives an adequate remedy for violation of a constitutional duty. If the remedy is not forthcoming from the political branches of government, then the courts must provide it by recognizing a damage remedy against the violators much the same as the courts earlier recognized and developed equitable remedies to enjoin unconstitutional actions. Implicit in this reasoning is the premise that the Constitution is a source of positive law, not merely a set of limitations on government.

. . . .

The prohibition against unlawful searches and seizures originated in the Magna Carta and has been a part of our statutory law since 1828. . . . The civil cause of action was fully developed in England and provided a damage remedy for the victims of unlawful searches at common law. . . .

[T]here is historical support for the claimants' contention that the rights guaranteed by these two provisions have common-law antecedents warranting a tort remedy for invasion of the rights they recognize. Indeed, the availability of a civil suit for damages sustained as the result of a constitutional violation was contemplated by the delegates to the Constitutional Convention of 1938. They did not consider whether one was desirable—they assumed a civil remedy already existed. . . .

. . . .

Moreover, implying a damage remedy here is consistent with the purposes underlying the duties imposed by these provisions and is necessary and appropriate to ensure the full realization of the rights they state. . . . The analysis is not unlike that which the Supreme Court and this Court have used to find a private right of action based upon cer-

tain regulatory statutes and is consistent with the rule formulated by the Restatement. . . .

. . . .

These sections establish a duty sufficient to support causes of action to secure the liberty interests guaranteed to individuals by the State Constitution independent of any common-law tort rule. . . . The harm they assert was visited on them was well within the contemplation of the framers when these provisions were enacted for fewer matters have caused greater concern throughout history than intrusions on personal liberty arising from the abuse of police power. Manifestly, these sections were designed to prevent such abuses and protect those in claimants' position. A damage remedy in favor of those harmed by police abuses is appropriate and in furtherance of the purpose underlying the sections.

Nor should claimants' right to recover damages be dependent upon the availability of a common-law tort cause of action. Common-law tort rules are heavily influenced by overriding concerns of adjusting losses and allocating risks, matters that have little relevance when constitutional rights are at stake. Moreover, the duties imposed upon government officers by these provisions address something far more serious than the private wrongs regulated by the common law. . . .

. . . By recognizing a narrow remedy for violations of sections 11 and 12 of article I of the State Constitution, we provide appropriate protection against official misconduct at the State level. *Brown*, 89 N.Y.2d at 187–92, 652 N.Y.S.2d at 232–35, 674 N.E.2d at 1138–1141. Essentially, to give any meaning to the state constitutional right against unreasonable searches and seizures the court allowed a

cause of action under the state constitution to vindicate a violation of that right.

Comment from the decision in *Newell v. City of Elgin*, 34 Ill.App.3d 719, 340 N.E.2d 344 (1976), lends added support for the trial court's decision in the case *sub judice*. The Appellate Court of Illinois recognized a cause of action for damages under the state constitution against the city based solely on the rationale in *Bivens*. Police drove squad cars across the center line and forced Newell, who was on a motorcycle, off the road and into a curb resulting in his injury. Police then ordered Newell to ride his motorcycle to the police station and threatened to shoot him if he changed direction. He filed a complaint against the city of Elgin, the villages of Bartlett and Hanover Park and several police officers seeking exemplary damages for violation of his rights under, *inter alia*, the unreasonable searches and seizures provision of the Illinois constitution. The court below dismissed the complaint for failure to state a cause of action for damages, but the appellate court reversed because the municipalities could be held liable for actual damages and remanded the case for further proceedings. The court explained: " 'The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.' " *Id.*, 34 Ill.App.3d at 724, 340 N.E.2d at 349 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60, 69 (1803)).

In connection with the Majority's stated policy considerations, I note its failure to recognize the overriding need and public demand for the state and local governments to enforce rights guaranteed in the state's Constitution against unreasonable searches and seizures by eradicating excessive use of force by police in the performance of their duties. The Louisiana Supreme Court said it best in *Moresi v. Louisiana*, 567 So.2d 1081, 1093 (La.1990), in allowing a private damages cause of action for violation of rights guaranteed by the state constitution against unreasonable searches and seizures:

Indeed, the limitations on remedies under ordinary state law for violations of rights by other private citizens argue in favor of a state constitutional remedy. The injuries inflicted by officials acting under color of law are substantially different in kind than those inflicted by private parties. Recovery of damages is the only realistic remedy for a person deprived of his right to be free from unreasonable searches or seizures. Rarely will he be able to obviate the harm by securing injunctive relief from any court. Assuming his innocence of the crime charged, the exclusionary rule is simply irrelevant.

The foregoing reasoning applies with equal force here for there is no doubt that an individual in this Commonwealth should be allowed to pursue a cause of action under Article I, Section 8 the Pennsylvania Constitution to redress violations of the right against unreasonable searches and seizures. Moreover, it does not stretch the imagination to conclude that an unreasonable seizure under Article I, Section 8 is one that entails excessive use of force that is unnecessary in performing the officer's duties by any objective standard under the circumstances. For guidance see *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (defining "seizure" as when government actors restrain a citizen's liberty by means of physical force or show of authority and holding that law enforcement excessive use of force claims are to be analyzed under Fourth Amendment "objective" reasonableness standard that provides explicit textual source of constitutional protection against physically intrusive governmental conduct).

In regard to the contention that potential financial consequences might befall state and local governments if this Court were to allow a state constitutional cause of action for excessive use of force, I would point out that the Supreme Court in *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994), required the City to indemnify a police officer found liable to the plaintiff under various state tort claims arising out of the officer's use of unnecessary or excessive force in arresting the plaintiff. The court imposed liability on the City under the Tort Claims Act, 42 Pa.C.S. § 8548(a), for the judgment against the officer because he acted within the scope of his duties. *See also Wiehagen v. Borough of North Braddock*, 527 Pa. 517, 594 A.2d 303 (1991) (holding borough liable in state court to indemnify police officer for compensatory damages judgment against him and holding borough liable for plaintiff's reasonable attorney fees, costs and expenses incurred in a Section 1983 action, plus interest). Hence, the Majority's concerns over potential financial consequences that might befall state and local governments if a state constitutional cause of action were allowed is simply unsupportable even on policy consideration grounds when the governments may be made to pay damages in any event where judgments are entered against police in civil actions arising out of excessive use of force in making arrests.

Nevertheless, in a Section 1983 action for monetary relief a plaintiff must demonstrate that the conduct complained of was committed under color of state law and that it operated to deny the plaintiff a right or rights secured by the Constitution and the laws of the United States. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiff must prove a governmental policy, custom or practice that was responsible for the depri-

vation of a guaranteed right. *Id.* However, no such limitation is imposed under the explicit and self-executing provisions of Article I, Section 8, *see* n2 above, to prove a violation of one's right against unreasonable searches and seizures. I disagree that legislation is required to make the provision operative but more fundamentally discern no basis to foreclose a state constitutional cause of action in this case. After applying the factors in *Edmunds,* including review of relevant Pennsylvania cases, review of related cases from other states and review of policy considerations and their applicability to modern Pennsylvania jurisprudence, I conclude that the the trial court should be affirmed. It is evident that the absence of a right to relief is not clear and free from doubt and that the trial court therefore did not err.

In conclusion, the state and local governments ultimately must be held accountable for the excessive use of force by their police in violation of the unreasonable searches and seizures provision of Article I, Section 8 of the Pennsylvania Constitution. They alone have the power and the authority to avoid state constitutional claims by preventing excessive use of force by police through proper training and supervision and/or discharge and discipline in the face of repeated abuses of police power. The Constitution commands no less. I dissent.

Judge FRIEDMAN joins in this dissent.